The first case today is number 23-1910, Rony Miguel Cruz Galicia et al. v. Merrick B. Garland. At this time, would counsel for the petitioners please introduce themselves on the record to begin? Before you begin, I just want to make sure, Judge Lynch, can you hear us? Yes, everything's perfect, thank you. Okay, wonderful. We'll take a break, Dan, after the first two cases. Thank you, Judge. Good morning, and may it please the Court. My name is Christian Meyer on behalf of petitioners. If I may, I would reserve three minutes for rebuttal. You may. Okay. Petitioners have brought this petition for review challenging the agency's application of… Could you speak up just a little bit louder? I'm having a little trouble. Yes, of course. Thank you. So this petition for review is based on the agency's application of a affirmance without opinion. Petitioners challenge that this was a determination made in error. The first major hurdle is jurisdiction. I would note that this Court has found in circumstances that agency determinations are reviewable. In how the Ashcroft, this Court found that the Board has the duty to follow its own federal regulations. And it also noted that… Isn't one of the grounds by which they can justify not doing a full opinion is that it's clear enough that the answer… In relation to the merits decision? Yes. Yes. Well, that's true. That same statute provides not just that they determined that the result was correct and that any errors were harmless, but it also has additional requirements that the issues on appeal are squarely controlled by Board or federal precedent as well as them not involving a novel factual situation or the issues not being so substantial as to warrant a written decision. Right. And what about that last prong? Why isn't it possible that's what was going on here? And how do we review that? Do we then do our own independent assessment of whether it was substantial? Well, as the Court noted in how the Court has its own set of precedent that provides a meaningful avenue for reviewing whether an issue brought on appeal is substantial. Here there is no precedent as to whether climate refugees or any type of application for asylum based on climate change is legally viable. And it is substantial given the fact that in the general context of asylum this is going to be an area of law that becomes more and more pressing as climate change creates more issues and causes more people to flee or leave their countries of origin. So it is important that the Board issue precedential decisions in relation to a new emerging and what will become a repeat cause for asylum. What about, Mr. Meyer, what about the IJ's finding that the harm alleged here did not come close to constituting the type of harm that could establish persecution? Well, in relation to that, the argument that was made, as was noted in the petitioner's report, was about malnutrition, fearing that their child would starve as a result of hurricanes that had made their farming land inhospitable. Now the supporting record indicates that in relation to malnutrition the government of Guatemala has neglected to address that in any meaningful way. The Board's precedent in matter of TZ provides that the deliberate imposition of certain essentials of life may amount to persecution. So as of right now there is no meaningful precedent that addresses whether purposeful neglect or neglect in general on behalf of a home country's government in relation to a refugee. And what about the definition of the PSG just under the ordinary standards not being, on this record, particularized enough and too amorphous? Yes, I would note that- In other words, even if there's a novel question, when specifically identified, etc., can a climate refugee count as a PSG? There's a separate question here, do we have a record which even provides the contours that would enable us to decide that question? And as I take it, the IJ and BIA could be understood to, or BIA affirming the IJ is just saying, just applying the ordinary standards of what constitutes a PSG, this record just doesn't meet it, that's not a novel question. Yes, so the first thing I would note is the immigration judge did note his own language in the record, is that the particular social group is novel. So I think that points to- That's a separate question from what I'm asking, which is, because he goes on to then say, the problem here is- Is particularity and social distinction. I would note that the term refugee, within the context of asylum, certainly has a specific meaning as to fleeing persecution. In a general sense, in a societal sense- Yeah, but that just raises all the questions about, in the climate context, what is the account here given that would show this distinctiveness? And the argument is, as I take it, on this record, those aspects clearly weren't met in the way that would satisfy the normal requirements for showing distinctiveness and particularity. So I would point you to the State Department report that was included in there, in the record, that notes that the Guatemalan government does not accept, in the definition of internally that satisfies that, is people who have been displaced due to climate change. Don't you need to show, for asylum, you need to show that the government is itself, or by willful acquiescence, harming your client because your client is a climate refugee? Yes. The evidence seems to be that because of climate problems, your client is a refugee, but that line of logic doesn't work for asylum, does it? It does if there is willful inaction that results- But the inaction has to be because, are you saying there's evidence here that the Guatemalan government is starving people because they are climate refugees? I believe that in the supporting record that their response to the malnutrition created by these circumstances is being neglected. On account of their status, on account of what group, them being a member of what group? In this case, it would be because they're climate refugees. And where is the evidence that the government is targeting climate refugees? It's mainly circumstantial in this record. But I thought your point was that the IJ didn't rely on a nexus finding. As to the past persecution, that's correct. I believe, regarding a well-founded fear of future persecution, they did note the nexus. But just so I track just what you're arguing, if I understood the reason you were focusing on harm, and particularly an amorphous for the PSG, is because those were the grounds with respect to past persecution that justified the denial. And then you're saying there had to be an opinion on that because those were not insubstantial questions. Yes, exactly. And we don't have a finding by the IJ that the past persecution fails because of a lack of nexus. So that can't be the reason, if I'm following, for issuing an affirmance without an opinion. So I believe that I don't have the exact finding in front of me. There was a discussion that the harm may not have risen to the level of persecution. That's a different point than nexus. Yes, I understand. However, he also precluded a finding of past persecution on account of protected ground because he found that the particular social group was not viable. And I would note the merits of the decision and the Board's affirmance without opinion are two separate issues. And I think that this Court, the purpose of meaningful judicial review of such agency decisions is to ensure that they're abiding by their own guidelines. And their own guidelines within 8 CFR 1003.1D are to consistent with the Act and regulations and through precedential decisions provide clear and uniform guidance to the service, immigration judges, and the general public on the proper interpretation of asylum law. While the merits of petitioner's underlying claim may be at issue, it doesn't change the fact that the affirmance without opinion was done in error. It was in an area of extreme substantial issue because this is going to be something that is going to be argued throughout the United States as climate change becomes an ongoing issue. Further? Judge Lynch, anything further? Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Respondent please introduce herself on the record to begin? Thank you, Your Honors. Katie Rourke on behalf of the Attorney General. Asylum is not available to non-citizens like petitioners who voluntarily migrate solely due to private economic difficulties stemming from changes in the climate. Can you just address where we just left off about the issuance of a non-precedented, just a straight affirmance without opinion? Yeah. So assuming the Court has jurisdiction to review the... No, no. I'm asking... Oh, keep going. Assuming the Court does have jurisdiction, the Board didn't err in issuing its affirmance without opinion. The lack of cases specifically about climate refugees can presumably attributed to the fact that it is self-evident that making such a claim would be doomed from the start. Our asylum laws are incredibly narrow. They only apply to non-citizens who have been persecuted or who have a well-founded fear of persecution on account of their race, religion, nationality, membership in a particular social group, or political opinion. They do not cover those who are fleeing natural economic disaster, generalized civil strife. And why is that? What's the part of the decision that you're saying was so self-evident? Is it that it was not a PSG, that it was too amorphous distinctive? Is it nexus? Is it that there was no persecution? What is the ground? I think it's all of it, Your Honor. Well, did the IJ as to past persecution rely on nexus? So I think my co-counsel, I'm not co-counsel, opposing counsel is correct in saying that the immigration judge's findings for past persecution were based on the fact that there was no harm rising to the level of persecution and the fact that the particular social group was not a nexus. So not a nexus. So not a nexus. So affirming that decision, I guess you would say, can that be affirmed without opinion on nexus grounds? It can, Your Honor.  On the surface, I do agree. It may appear that. No, no. Just follow what I'm asking. If we thought there was no evidence of nexus in the record, can the BIA affirm the IJ without opinion, and we bless that on the ground that there's no evidence of nexus? Yes, Your Honor. So the issue of nexus would be dispositive of petitioner's asylum claims, either because the particular social group was not cognizable or because even if the court assumed the particular social group was cognizable and that there was no nexus to a protected ground anyways, which is what the immigration judge found in her findings. Is it possible the immigration judge thought it was self-evident that if there was no persecution and if there was no particular social group, that there could not possibly be a nexus between the two of them? Yes, the immigration judge, Your Honor, does say that at page 51 of the immigration, of the administrative record, that petitioner could not establish their claim because there was no nexus to a protected ground and also because there was an insufficient connection to any deliberate government action. And again, as I was saying, on the surface, petitioner's claim might appear novel, but when you delve into the substance of that claim, their claim really is about poor socioeconomic conditions in Guatemala and petitioner's own words spell this out. If you look at page 152 of the administrative record, they say, we came to the United States because we were so poor and had such little resources. At page 219, we left due to the lack of opportunities. We lived in poverty. In our brief, we cite nearly a dozen cases from this court and her sister's circuits that clearly establish that persons fleeing poor socioeconomic conditions do not qualify as refugees. And adding climate change as a contributing factor to those conditions does not magically transform it into a novel factual situation, let alone a viable basis for asylum. Does that mean a climate refugee cannot be a PSG? Yes, Your Honor. So I believe the immigration judge was correct in finding that. So if you had a group of people fleeing because of climate and as a consequence of that, the government chose to persecute them on that basis, the claim would fail? Because it's not particular and it has no social distinction. Well, that's inherently? On this record, at least, Your Honor. Okay. So what about this record makes it clear that this is not a PSG just under the ordinary standards for amorphousness? So the record doesn't compel a finding for the particularity because petitioner's group encompasses individuals who have fled their homes either temporarily or permanently because of a variety of environmental disruptions. Their group isn't limited to just Guatemalans, but it could also include individuals from countries around the world. And this court has repeatedly held that groups that sweep up a large and disparate population are not sufficiently particular. And there is also no clear benchmark for determining group membership because it would require ascertaining when the conditions in a given area become sufficiently uninhabitable and severe enough to compel someone to leave. And there's nothing in this record that attempts to give any of those benchmarks? Yes. My next was to say there's nothing in the terms used to define petitioner's group that provide any insight as to when that threshold of ininhabitability is met, leaving it open to varying subjective interpretations, which this court has said. And it strikes me that a climate refugee could mean anything from floods, landslides, droughts, seawater coming in. There are just a huge number of environmental effects that could disrupt portions of the population and cause them to move. Isn't that one of the problems inherent with the broad definition being used here of climate refugees? Yes, Your Honor. So the number of people it would sweep up based on the variety of environmental disruptions that climate change could inevitably be attributed to is too large to be the type of homogeneous group that this court has found to be particular. I suppose even aside from that, there would be a social distinctiveness problem because at least whatever the group could be, there's no account in the record, I guess, on the IJ's view as to what this country thinks is the relevant characteristics of that population that would make it a coherent group. Is that the idea? Correct, Your Honor. And there's no commonly accepted, at least on this record, commonly accepted definition of the term climate refugees in Guatemalan society and none that I could find in either U.S. law or even international law. But in terms of social distinction, Petitioner relies heavily on a quote from the 2021 State Department report, which states that the Guatemalan government does not officially recognize the existence of internally displaced persons within its borders except for those displaced by climate change and natural disasters. And I think here the terms used to describe Petitioner's group are incredibly important because the terms refugee and internally displaced persons have very specific definitions. A refugee is a person who is unable or unwilling to return to their native country because of persecution on account of a protected ground, whereas an internally displaced person is someone who is forced to leave their home but who remains within the borders of their own country. So by definition, an internally displaced person cannot be a refugee because a crucial requirement to being considered a refugee is the crossing of an international border. So while Guatemalan society may recognize persons displaced by climate change within the borders of their own country, that tells us nothing about whether Guatemalan society views persons who have been displaced beyond the borders of their own country as a distinct group. And I would just like to address opposing counsel's argument that the Guatemalan government has done nothing to address the issue of malnutrition. On this record, that simply is not true. The record does reflect that they have taken steps to address the issue, including allocating tens of millions of dollars to combatting childhood malnutrition. That's at page 128. They have worked with nongovernmental organizations to identify cases of malnutrition. Before you end, I just want to not leap over the initial question about jurisdiction. Do you have a... How are we supposed to think about the question of our jurisdiction if the question is was there no substantial basis for the claim such that it could therefore be affirmed without opinion? Is that something we review ourselves to determine how substantial the claim is? It just seems then the jurisdiction and the merits just seem to crash into one another. Yeah, that was one of the points that the 8th Circuit made in Nagiri v. Ashcroft that there is no adequate and meaningful standard of review to review the Board's Affirmance Without Opinion decision because a separate review of the Board's Affirmance Without Opinion inevitably merges with the merits with the Court's review of the underlying merits. It makes no practical difference whether the Board properly streamlined Petitioner's case because the Court can directly review the immigration judge's decision and principles of administrative law require that the agency provide a reasoned explanation for its... But I guess what I'm just trying to figure out how the regulation works and what our review is of it. Take a really novel question and then the Board says, counter to what it seems like on the record, I'm not saying that's what the record shows here. The Board says no opinion and then the government says yeah, you don't have to do an opinion because it was insubstantial. Really novel, hugely important question, but on this record it's insubstantial. And then I look at the record, it's plainly not insubstantial. It seems like a very serious claim. Can I review to determine whether there was a substantial question or not? The government's position is that the BIA doesn't mean you could just always affirm without opinion in every case. The Court can still address the agency's decision by reviewing the underlying merits so it makes no practical difference. That means that the BIA not receiving this regulation could issue an affirmance without opinion in any case and that would never be error. The error would only be the merits. Again, our disposition doesn't make a difference. I think we have two questions here. The first question is an affirmance without a decision and addressing the argument that this was in violation of the agency's own regulations. And as I've understood it, you say we have no jurisdiction to get into that, but the second question, reviewing the IJ's decision, which has been summarily affirmed, is subject to the ordinary standards of review. Is that correct? Yes, Your Honor. That was the point I was trying to make, is that the Court can still review. If a petitioner's view is that if there was a violation of the reg, even if they would lose on to get an actual opinion from the BIA, and they say under Haoud we've held that in some circumstances we can review whether an opinion had to be issued. So I'm trying to figure out how to square what you're telling me and what we've held, which is that we sometimes can review whether the BIA had to issue an opinion. And if you're saying the BIA never has to issue an opinion as long as it says there was no substantial question, because we can't review whether there was a substantial question, that would effectively insulate the BIA from ever having to issue an opinion consistent with the reg, right? I understand Your Honor's concern, but the Board would still have to find that the regulation, the parameters of the regulation were satisfied first, that the immigration judge's decision was correct, and that any errors were harmless or non-material, and that the issues in the case either were squarely controlled by existing precedent and do not evolve the application of that precedent to a novel factual situation, or that the factual legal issues in the case are not so substantial that the case warrants the issuance of an indecision. So they still have to... And you're saying it's the last thing that happened here? I'm saying it could be either, but we don't know because that's the issue with reviewing these types of decisions as a practical matter because the Court has no way of knowing which of the alternatives outlined in the immigration judge's decision. As to Your Honor's point about Hood v. Ashcroft, the government's position is that case is distinguishable. The Court there had found it had jurisdiction to review the Board's decision to streamline in a case where it was unclear whether the Board had affirmed the immigration judge's decision because the non-citizen's asylum application was untimely, which would have not been reviewable by statute by this Court, or because the non-citizen had failed to meet his burden of proof on the merits, which would have been reviewable. There also had been an intervening change in the law, which may have undermined the immigration judge's reasoning for denying on the merits. So for that reason, the Court remanded for the Board to provide further explanation. So I think what was really driving the Court in Hood was this concern that this presidential decision that was favorable to the non-citizen may have been overlooked by the Board. So a narrow reading... Counsel, another way of looking at Mahmood is that the jurisdictional question is not a per se rule that there never is or there always is. It may well depend on what the IJ has said, and that would be a partial response to the concern about an agency run amok. I take it your argument is this isn't like Mahmood. It doesn't fit that exception, and given the pretty obvious nature from the IJ's decision that a number of elements haven't been met, this simply isn't the extreme case where the Court would assert jurisdiction. Yes, Your Honor, I would agree with that characterization that Hood is an outlier in the sense that the underlying merits have been undermined by this intervening change in the law. Just one last point, which is just maybe to get back to where you started us, and maybe this is why you started us that way. I take it your position is, with respect to the question of whether the streamlining was error, we can assume jurisdiction if we conclude that it wasn't error. And on this record, we could easily conclude it wasn't error. Correct, Your Honor. The underlying merits stand for themselves. If there are no further questions, I would respectfully ask that the Court deny the petition for review. Thank you, Counsel. At this time, if Counsel for the Petitioner would please reintroduce himself on the record. He has a three-minute rebuttal. Christian Meyer As the Court noted, the importance of judicial review of the agency decisions to exercise Affirmative Without Opinion is of paramount importance. Like you said, the failure to address novel or recurring legal issues ultimately underlines the purpose of Affirmative Without Opinion. I thought it happened regularly in thousands of BIA opinions where on some substantial point they just say they agree with or for the reasons stated by the IJ and we have this doctrine that will merge the two and review them as one. So, isn't it common that on some points and then in some cases all points, the BIA finds no need to repeat what the IJ found? Well true, it becomes a final agency decision which is reviewable on the merits. Affirming Without Opinion does not just say that there were no errors or the decision that was reached was correct. It says that the issues on appeal are not squarely controlled or that they are not novel or that they're not substantial. And it's essential that the Court provide judicial review because like the Court noted, there is the potential for abuse where novel issues are not being addressed and that undermines the entire purpose of the streamlining function which is to make sure. So just to follow what you would like us practically to do, we do a first cut review, is the issue substantial? Even if it's a loser, it still could be substantial enough that there should have been an opinion. So we vacate and remand without getting to the merits. That's the idea? Certainly. And if we conclude it's insubstantial, then obviously we affirm the decision not to have issued an opinion. Yes. But then that would suggest that we effectively have jurisdiction to review every streamlining decision. But I guess you're saying we just are reviewing it for whether the issue was substantial? That's what we do? Exactly. And that serves the purpose of ensuring that the Board is engaging in its proper function to inform the immigration courts about how to handle novel and recurring issues. The merits of petitioner's claim are an entirely separate issue from whether or not precedent or a written decision is required to advance. But you agree on the streamlining question, you lose if we conclude it was insubstantial. Yes. Yes. But ultimately that is a question that this court has found it has to a merging of the merits. I don't think that that is a compelling argument. Because whether or not an area of law is new, emerging, recurring, substantial, that's entirely separate from whether or not petitioner is going to succeed on the merits. And ensuring that there is a meaningful review of agency decisions, it promotes a healthy and functioning system where the Board cannot just rubber stamp decisions without providing meaningful guidance. I just want to be clear your argument is based entirely on your interpretation of the BIA regulations and not the due process clause. No. This court has held that there is no due process violation. Okay, and therefore what is your claim based on? That the Board has I'm sorry, that this court has said that the agency is bound to enforce its own regulations. And its own regulations state that panel decisions are necessary to resolve a complex novel, unusual, or recurring issue like that. Okay, so you're saying the agencies on regulations create a cause of action for you on review of this administrative decision. I believe so, and I believe that's supported by this court and how as well. Thank you. Have a great day. Thank you counsel, that concludes argument in this case.